**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LISA FRAZIER; ACCESS NOW, INC.; and R. DAVID NEW, | Case No. |
| Plaintiffs, | |
| v. | |
| CHURCHILL DOWNS INCORPORATED, | Filed Electronically |
| Defendant. | |

**COMPLAINT FOR PERMANENT INJUNCTION
REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF
<u>DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)</u>**

Lisa Frazier, Access Now, Inc., and R. David New(collectively, "Plaintiffs") seek a permanent injunction requiring a change in Churchill Downs Incorporated's ("Defendant") corporate polices to cause Defendant's Websites to become, and remain, accessible, and in support thereof, Plaintiffs assert as follows:

<u>**INTRODUCTION**</u>

1.      Plaintiffs bring this action against Defendant and assert that its websites are not accessible to blind and visually impaired consumers in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Plaintiffs seek a permanent injunction to cause a change in Defendant's corporate policies related to its web-based technologies so that Defendant's websites will become, and will remain, accessible. The websites at issue include, but are not limited to, www.riverwalkvicksburg.com; www.miamivalleygaming.com; www.churchilldowns.com; www.caldercasino.com; www.arlingtonpark.com; www.twinspires.com; and www.oxfordcasino.com (the "Websites").

2.      While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

3.      Blind and visually impaired consumers must use screen reading software or other assistive technologies in order to access website content. Defendant's Websites contain digital barriers which limit the ability of blind and visually impaired consumers to access the site.

4.      Plaintiffs have patronized Defendant's Websites in the past, and intend to continue to patronize Defendant's Websites in the future. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur on Defendant's Websites, Plaintiffs will continue to be denied full access to the Websites as described, and will be deterred from fully using Defendant's Websites, and attending events at its locations, like the Kentucky Derby, in the future.

5.      The ADA expressly contemplates the type of injunctive relief that Plaintiffs seek in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . .

42 U.S.C. § 12188(a)(2).

6.      Because Defendant's Websites have never been accessible and because Defendant does not have, and has never had, a corporate policy that is reasonably calculated to cause its

Websites to become and remain accessible, Plaintiffs invoke 42 U.S.C. § 12188(a)(2) and seek a

permanent injunction requiring:

    a)  that Defendant retain a qualified consultant acceptable to Plaintiffs ("Mutually Agreed Upon Consultant") and who shall assist it in improving the accessibility of its Websites so that they comply with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");

    b)  that Defendant work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

    c)  that Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Websites continue to comply with WCAG 2.0 AA on an ongoing basis;

    d)  that Defendant work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Websites continue to comply with WCAG 2.0 AA on an ongoing basis; and,

    e)  that Defendant work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Websites, along with an e-mail address and toll free phone number to report accessibility-related problems.[1]

## JURISDICTION AND VENUE

    7.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

    8.    Plaintiff Frazier's claims asserted herein arose in this judicial district.

---

[1] Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

9.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

10.      Plaintiff Frazier is and, at all times relevant hereto, has been a resident of Allegheny County, Pennsylvania. Plaintiff Frazier is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

11.      Plaintiff Access Now, Inc. ("ANI") is a non-profit organization that provides advocacy services on behalf of blind and other disabled individuals who are members of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff ANI has members representing 47 states, including residents of the Commonwealth of Pennsylvania and the State of Florida. ANI is engaged in seeking compliance with the ADA through education efforts to correct violations when found, and when necessary and appropriate, in litigation to require persons and entities in violation of the ADA to comply with the Act. One of the primary purposes of the Association is to represent its members to assure that public accommodations are accessible to and useable by its members, and to assure that its members are not discriminated against because of their disabilities, or denied the benefits of the services, programs, and activities of public accommodations. ANI members continue to be discriminated against by Defendant's lack of compliance.

12.      Plaintiff New is, and at all times relevant hereto, has been a resident of the State of Florida. Plaintiff New is, and at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations

implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff New is a member of and serves as President of Plaintiff ANI.

13.     Defendant Churchill Downs Incorporated is a Kentucky corporation with its principal place of business located at 600 N. Hurstbourne Pkwy, Suite 400, Louisville, KY 40222. In addition to the world-famous venue of the Kentucky Derby, Defendant owns, operates and maintains five racetracks, six casinos, the country's leading online wagering business, a video poker business, a multi-state network of off-track betting facilities, and a collection of racing-related data, and telecommunication companies that support its sports and gaming operations. Defendant employs more than 5,000 people and maintains physical locations in eleven states. Defendant's brick and mortar locations and websites are integrated and are public accommodations pursuant to 42 U.S.C. § 12181(7).

## **FACTUAL BACKGROUND**

14.     The internet has become a significant source of information and a means for conducting everyday activities such as shopping, banking, gaming, and entertainment for both sighted as well as persons with visual and other perceptual or motor disabilities.

15.     Individuals with visual disabilities may access websites by using keyboards in conjunction with screen reader software that converts text to audio. Screen reader software provides the primary method by which individuals with visual disabilities may independently use the internet. Unless websites are designed to be read by screen reader software, individuals with visual disabilities are unable to fully access websites and the information, products and services available through the sites.

16.     The international website standards organization, W3C, has published WCAG 2.0 AA. WCAG 2.0 AA provides widely accepted guidelines for making websites accessible to

individuals with disabilities. These guidelines have been endorsed by the United States Department of Justice and numerous federal courts.

17.     Through its Websites, Defendant offers users the information they need to participate in its online gaming and betting platforms, such as information on handicapping, wagering, live odds, and calendars of events taking place at Defendant's physical locations. Defendant's Website also helps users view and manage their rewards club membership and member benefits.

18.     Plaintiffs Frazier and New are permanently blind and use screen reader software in order to access the internet and read website content.

19.     Despite attempting to use and navigate the Websites, Plaintiffs have been denied the full use and enjoyment of the facilities, goods, and services available on the Websites as a result of access barriers.

20.     The barriers at the Websites have caused a denial of Plaintiffs' full and equal access in the past, and now deter Plaintiffs from attempting to use Defendant's Websites, or frequent the physical locations they advertise.

21.     The access barriers at the Websites, include but are not limited to, the following:

   a)  A text equivalent for every non-text element is not provided;

   b)  Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

   c)  A correct reading sequence is not provided on pages where the sequence in which content is presented affects its meaning;

   d)  Text cannot be resized up to 200 percent without assistive technology so that it may still be viewed without loss of content or functionality;

   e)  Not all functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function depends on the path of the user's movement;

f)  On pages where a user can move to a part of a page via the keyboard, the user is unable to move away from that part of the page using only the keyboard;

g)  If the content enforces a time limit, the user is not always able to extend, adjust or disable it unless the time limit is part of a real time activity or would invalidate the activity;

h)  A mechanism is not always available to bypass blocks of content that are repeated on multiple web pages;

i)  Web pages lack titles that describe their topic or purpose;

j)  The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

k)  Keyboard user interfaces lack a mode of operation where the keyboard focus indicator is visible;

l)  The default human language of each Web page cannot be programmatically determined;

m) Changing the focus of any user interface component may automatically cause a change of context;

n)  Labels or instructions are not always provided when content requires user input;

o)  In content implemented using markup languages, elements do not always have complete start and end tags, are nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

p)  The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

22.    If the Websites were accessible, Plaintiffs could independently participate in the entertainment and gaming services available on Defendant's Websites.

23.    Though Defendant may have centralized policies regarding the maintenance and operation of its Websites, Defendant has never had a plan or policy that is reasonably calculated

to make its Websites fully accessible to, and independently usable by, individuals with visual disabilities.

24.     Without injunctive relief, Plaintiffs and other individuals with visual disabilities will continue to be unable to independently use the Websites in violation of their rights under the ADA.

## SUBSTANTIVE VIOLATION
### (Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)

25.     The allegations contained in the previous paragraphs are incorporated by reference.

26.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

27.     Defendant, owning and operating various brick-and-mortar sports, entertainment, and gaming venues, itself is a public accommodation under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

28.     Defendant's Websites themselves also constitute places of public accommodation within the definition of Title III of the ADA because they are critical to Defendant's offering of these services to the public. 42 U.S.C. § 12181(7).

29.     Alternatively, Defendant's Websites themselves are places of public accommodation because they provide gaming and entertainment services to the public. 42 U.S.C. § 12181(7).

30.     It is unlawful under Title III of the ADA to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

31.     It is also unlawful under Title III of the ADA to afford individuals with disabilities an unequal opportunity to participate in or benefit from goods, services, facilities, privileges, advantages or accommodations. 42 U.S.C. §12182(b)(1)(A)(ii).

32.     Title III specifically prohibits "a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii); 28 C.F.R. § 36.303(a).

33.     Title III also requires that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1).

34.     The regulation sets forth numerous examples of "auxiliary aids and services," including "…accessible electronic and information technology; or other effective methods of

making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b).

35.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.

36.     Plaintiffs, who are blind and have disabilities that substantially limit the major life activity of seeing within the meaning of 42 U.S.C. §§ 12102(1)(A) and (2)(A), have been denied full and equal access to the Websites. Plaintiffs have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

37.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

a.      A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Websites are fully accessible to, and independently usable by, individuals with visual disabilities;

b.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to bring its Websites into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Websites are fully accessible to, and independently usable by, individuals with visual disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiffs is described more fully in Paragraph 6 above;

c.      Payment of costs of suit;

    d.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

    e.      The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: January 3, 2017                Respectfully Submitted,

                          */s/ Benjamin J. Sweet*
                          Benjamin J. Sweet
                          bsweet@carlsonlynch.com
                          */s/ R. Bruce Carlson*
                          R. Bruce Carlson
                          bcarlson@carlsonlynch.com
                          */s/ Kevin W. Tucker*
                          Kevin W. Tucker
                          ktucker@carlsonlynch.com
                          CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP
                          1133 Penn Avenue, 5th Floor
                          Pittsburgh, PA 15222
                          Phone: (412) 322.9243
                          Fax: (412) 231.0246

                          *Counsel for Plaintiffs Lisa Frazier, Access Now, Inc., and R. David New*